**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**THE CHIROPRACTIC NEUROLOGY CENTER**
**OF TUPELO; CHIROPRACTIC NEUROLOGY**
**CONSULTANT PC d/b/a AMERICAN FUNCTIONAL**
**NEUROLOGY INSTITUTE; DR. WILLIAM A. BARLOW, D.C.;**
**and DR. MATTHEW C. MACKEY, D.C.**                    **PLAINTIFFS/**
                                                       **COUNTER-DEFENDANTS**

**VS.**                                        **NO. 1:15CV219-GHD-DAS**

**DR. MICHAEL JOHNSON, D.C.;**
**DR. MICHAEL JOHNSON d/b/a**
**THE CENTER FOR QUALITY HEALTHCARE;**
**DR. MICHAEL JOHNSON d/b/a**
**JOHNSON METHOD CONSULTING;**
**JOHN DOE ENTITIES 1-10; and**
**JOHN DOES 1-10**                                      **DEFENDANTS/**
                                                       **COUNTER-PLAINTIFFS**

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    **COME NOW** Defendants/Counter Plaintiffs, Dr. Michael Johnson, D.C., Dr. Michael Johnson d/b/a The Center for Quality Healthcare and Dr. Michael Johnson d/b/a Johnson Method Consulting (collectively "**Defendants**"), by and through counsel, and submit the instant Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment filed pursuant to F.R.C.P. 56, showing as follows:

**INTRODUCTION**

    Plaintiffs' response to Defendants' motion for summary judgment fails in its pursuit to persuade this Court that genuine issues of material fact exist for trial, such that denial of Defendants' motion would be appropriate. Throughout their response Plaintiffs continually rely on mere allegations and speculation in an effort to demonstrate that genuine issues of material fact exist. This is not sufficient. The summary judgment standard mandates that the non-movant

2153367

"present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial." See, Williams v. Univ. of Miss. Med. Ctr., 2011 U.S. Dist. LEXIS 78654 *6 (S.D. Miss. 2011). Thus, Defendants assert that summary judgment is appropriate as to all claims being asserted by Plaintiffs.

For the Court's convenience Defendants will address Plaintiffs' arguments in the order they were addressed in Plaintiffs' response.[1]

## LAW AND ARGUMENT

### I. Plaintiffs defamation claim fails as a matter of law

Succinctly stated, Plaintiffs allege that Dr. Johnson defamed them by making false statements. In their brief Plaintiffs argue for 11 pages attempting to persuade this Court that their defamation claim should survive summary judgment. For the sake of brevity, Defendants will focus their reply on the most glaring issues with Plaintiffs' response as it relates to this claim.

First, Plaintiffs' reliance on Dr. Barlow's denials as proof that Dr. Johnson's statements are false is misplaced. Borrowing a case cited by Plaintiffs in their response (Docket no. 142, p. 23), "[t]he threshold question in a defamation suit is whether the published statements are false." Hayne v. Innocence Project, 2011 U.S. Dist. LEXIS 5586 *12 (S.D. Miss. 2011). Importantly, "[a] plaintiff may not rely on his own denials to serve as proof that the statements at issue are false." Id. at *13. This is precisely what Plaintiffs have done in this case.

One of the many allegations against Dr. Johnson is that he defamed Plaintiffs by saying they were committing Medicare fraud and/or were being investigated for Medicare fraud.

---

[1] Due to the page limitation of this Reply Brief Defendants were unable to address all arguments advanced by Plaintiffs in their Response. As such, and as not to waive any potential arguments Defendants may have, Defendants incorporate by reference their original memorandum brief in support of their summary judgment as if set forth fully herein.

2

Naturally, Plaintiffs vehemently deny these statements. Plaintiffs use this statement in particular as but one example that Dr. Johnson made false or misleading statements. The issue with Plaintiffs' proof supporting their claim that the statements are false is that it runs afoul of the law in Mississippi. The only proof presented by Plaintiffs to support their contention that Dr. Johnson's statements are false is Dr. Barlow's own testimony, and a report from a retained expert, which is not in and of itself fully supportive of said position.[2]

In response to Dr. Johnson's alleged statement that Plaintiffs are committing Medicare fraud Plaintiffs argue that, "[a]dditionally, Dr. Barlow is not committing Medicare fraud. Dr. Barlow does not provide services that are covered by Medicare and in turn does not bill Medicare." (Docket no. 142, p. 22). The citation to the record following these two sentences are to Barlow's deposition, pp. 255-257 and to the Hauberg report, Exhibit X. (Id.) Plaintiffs then summarily conclude that the above statements, i.e. Dr. Johnson's alleged statements that Plaintiffs are committing Medicare fraud, are technically false. (See Id.). According to defamation law in Mississippi, specifically the very case cited by Plaintiffs in their brief, this is insufficient to prove that Dr. Johnson's statements are false. Plaintiffs possess no other proof that Defendants' statements are allegedly false other than their own self-serving testimony, or they would have produced same. Thus, Plaintiffs are unable to prove that any of Dr. Johnson's statements are false and their defamation claim fails as a matter of law.[3]

Plaintiffs further argue that Mississippi no longer recognizes an "opinion exception", citing the Roussell v. Robbins case in support of this proposition. While an "opinion exception"

---

[2]Mr. Hauberg states: "Drs. Barlow and Mackey were not enrolled as Medicare providers. . . . Medicare regulations provide that non-enrolled providers may not service Medicare beneficiaries . . . ." Exhibit X p. 4.

[3]Moreover, it is apparent from a review of the facts that Plaintiffs are in violation of Medicare laws, as is more fully set forth in Defendants' memorandum in support of motion for summary judgment (Docket no. 116) and the report of Bob Anderson. (Docket no. 123, Exhibit "E").

2153367

may technically not be recognized by the Supreme Court, it does not necessarily follow that statements of opinion are treated the same as statements of fact under the First Amendment. This point is made clear by the Fifth Circuit in <u>Trout Point Lodge, Ltd. v. Handshoe</u>, a case out of the southern district of Mississippi, wherein the court stated "statements of opinion are actionable 'only if they clearly and unmistakably imply the allegation of undisclosed false and defamatory facts as the basis for the opinion'." 729 F.3d 481, 493 (5th Cir. 2013). Importantly, the <u>Handshoe</u> decision was handed down in 2013, 23 years **after** the Supreme Court opinion in <u>Milkovich</u>, cited by Plaintiffs in their brief as standing for the proposition that an opinion exception no longer exists. Defendants suggest that Plaintiffs are playing a game of semantics.

Regarding the Supreme Court decision in <u>Milkovich</u>, Plaintiffs fail to cite those portions of the opinion wherein the Court discusses that opinion statements still have protection from defamation suits provided certain conditions are met. "<u>Hepps</u> ensures that a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." <u>Milkovich v. Lorain Journal Co.</u>, 497 U.S. 1, 20 (S. Ct. 1990). Additionally, "we think the 'breathing space' which freedoms of expression require in order to survive is adequately secured by existing constitutional doctrine without the creation of an artificial dichotomy between 'opinion' and 'fact'." <u>Milkovich</u>, 497 U.S. at 19.

Defendants assert that Dr. Johnson's statements were clearly a matter of public concern. As such, they are entitled to constitutional protection unless they contain a provably false factual connotation. Plaintiffs, however, have failed to come forth with any proof, other than Dr. Barlow's own denials, which would tend to show that Dr. Johnson's statements contained a provably false factual connotation. Therefore, Defendants urge this Court to grant their motion as to this claim.

4

## II.     Plaintiffs' tortious interference with business relations claim fails

Regarding Plaintiffs' claim for tortious interference with business relations, they argue that summary judgment is not appropriate because they met their burden of establishing all four elements of this particular tort.  (Docket no. 142, pp. 31-35).  Defendant disagrees that Plaintiffs established all four elements, but for purposes of this reply brief they will focus on elements (2) and (4) of this particular tort.

The second element of tortious interference with business relations states that a plaintiff must prove "that the acts were intended to damage the plaintiff's business."  Smith v. Antler Insanity, LLC, 58 F. Supp. 3d 716, 726 (S.D. Miss. 2017).  Here, Plaintiffs failed to present affirmative evidence needed to satisfy the requisite element of intent.  Contrarily, Defendants, in their brief at p. 45, set forth specific evidence to refute Plaintiffs' allegations by demonstrating that Dr. Johnson's motivation for his actions was to provide a public service to the people of Tupelo, Mississippi.

There is no evidence in the record to suggest that Dr. Johnson *intended* to cause damage or loss to Plaintiffs' *business*.  Plaintiffs speculate as to Dr. Johnson's intent by merely restating, again, the same allegations contained not only in their Complaint, but the fact section of their brief as well.[4]  However, Plaintiffs fail to adequately link those events, even if true, to the requisite intent to damage Plaintiffs' business.  This is a key distinction.

The lack of a causal connection is fatal to Plaintiffs' argument, and ultimately, to this particular claim.  Plaintiffs' theory as it relates to this particular claim appears to be that since

---

[4] In their brief at page 32 Plaintiffs rely on one statement in Dr. Johnson's deposition wherein he stated that he wanted to punch Dr. Barlow in the mouth.  Dropped in a footnote Plaintiffs also provide a laundry list of things that Dr. Johnson allegedly did with regard to creating a website, reposting Dr. Barlow's comments, etc., presumably as further proof of Dr. Johnson's intent to harm Plaintiffs' business.

Dr. Johnson said he wanted to punch Dr. Barlow in the mouth, then it naturally follows that Dr. Johnson's intent was to damage Plaintiffs' business. Plaintiffs use this statement as the bridge to link the rather large gap between Dr. Johnson's statement and his motives. Unless Plaintiffs prove that Dr. Johnson intended to harm their business, this claim fails. Importantly, however, Plaintiffs have not presented this Court with any evidence to contradict Dr. Johnson's sworn testimony regarding his intent in this case; such intent being to provide a public service.

Plaintiffs seem content to rest on mere allegations and conclusory statements.[5] Simply repeating the same allegations, without more, does not prove intent. Plaintiffs seemed to be aware of the tenuous nature of this argument as they then wander into their fall back argument that "when relevant testimony and evidence are disputed . . . intent is generally a factual question uniquely within in the realm of the trier of fact . . .". (Docket no. 142, p. 32)(citations omitted). Defendants countered this argument by demonstrating, with sworn deposition testimony, that Dr. Johnson's intent was to provide a public service. See, Exhibit "B" to Motion, p. 187. Thus, from this Court's perspective, there is no relevant testimony or evidence that is disputed because Dr. Johnson's sworn testimony is the only evidence of intent currently before this Court.

Plaintiffs also argue in their brief at page 35 that they have satisfied the last element of this tort; actual damages. Interestingly, Plaintiffs produce no new evidence or proof to support this claim other than the self-serving affidavit of one patient, Britney Wood, who decided to not attend her follow-up appointment with Dr. Barlow, presumably due to the Facebook page. Plaintiffs continue this argument by stating that this caused lost profits of *about* $2,400 or $6,000, sums better suited for justice court than this honorable court. (Docket no. 142, p.

---

[5] Resting on mere allegations, however, is not sufficient when confronted with a properly supported summary judgment motion. "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Pioneer Exploration, L.L.C v. Steadfast Ins. Co., 767 F.3d 503, 511 (5th Cir. 2014).

2153367

35)(emphasis added). Such assertion is on its face extremely speculative. Plaintiffs have only established the amount that they could have charged Ms. Woods for one potential suggested course of treatment. They have not shown that they ever presented those costs, as opposed to insurance charges, or even such treatment plan to her or more importantly that she was willing to undertake such treatment and able to pay for it. As such, said proof is meaningless.

Moreover, do the Plaintiffs possess any additional proof regarding lost profits other than "about $2,400 or $6,000"? Is the jury going to be asked to speculate as well on the proper amount of damages? Are there any other patients or chiropractors that ceased utilizing Dr. Barlow's services due to the actions of Defendants?[6] The crucial answers to these questions are the types of affirmative evidence and specific facts that Plaintiffs have simply failed to present.

Plaintiffs' reliance on self-serving statements and their failure to present any affirmative evidence in response to Defendants' motion is fatal to their claim. The standard for damages is higher than resting on mere speculation or uncertainty. Plaintiffs must prove their alleged damages with reasonable certainty in order to recover. See, Phillips Brothers, LP v. Winstead, 129 So.3d 906, 925 (Miss. 2014). Plaintiffs are unable to produce any evidence other than what this Court has already seen: as a result, they failed in their attempt to prove intent and/or actual damages. Summary judgment is appropriate as to this claim.

## III.    Plaintiffs' intentional infliction of emotional distress fails

Plaintiffs claim that they suffer, or did suffer, emotional distress allegedly resulting from Dr. Johnson's actions and/or statements. They attempt to persuade this Court to deny Defendants' motion on this claim by analogizing the facts of this case to Donald v. Amoco Products and T. G. Blackwell Chevrolet v. Eshee. These cases are not persuasive, nor analogous

---

[6] Plaintiffs have not identified any such patients or doctors, although they have had ample opportunity to do so.

to the case *sub judice*, and, importantly, they do not analyze the elements of intentional infliction of emotional distress claims to the facts of the respective cases.

The <u>Blackwell Chevrolet</u> case cited by Plaintiffs on pages 36-37 of their brief is not an intentional infliction of emotional distress case.[7] The opinion fails to discuss intentional infliction of emotional distress claims or analyze any of the dealerships actions against the elements needed to prove same. On appeal, the sole issue before the Court was whether the trial court had allowed two conflicting jury instructions. <u>T.G. Blackwell Chevrolet Co. v. Eshee</u>, 261 So.2d 481, 484 (Miss. 1972). The facts are entirely different and simply not analogous to the facts of the present case. In short, the <u>Blackwell Chevrolet</u> case does nothing to advance Plaintiffs' intentional infliction of emotional distress claim.

The <u>Donald</u> case, cited by Plaintiffs on page 36 of their brief, is likewise neither controlling nor persuasive and the facts are not analogous to the facts present in this case. Plaintiffs failed to mention in their brief that the Court in the <u>Donald</u> case held that the trial court erred in dismissing the outrageous conduct claim ***for failure to state a claim***. The Court in <u>Donald</u> was not reviewing the lower court's decision to grant or deny a motion for summary judgment. "Based on these allegations being accepted as true, the lower court erred in dismissing this cause of action for failure to state a claim, and the judgment of dismissal is reversed." <u>Donald v. AMOCO Prod. Co.</u>, 735 So. 2d 161, 179 (Miss. 1999).

Defendants' argument in this case is NOT that Plaintiffs failed to adequately ***plead*** intentional infliction of emotional distress; Defendants' argument is that Plaintiffs have failed to

---

[7]As the Mississippi Supreme Court noted, "[i]t is rather a suit on alleged tort committed against the appellee by the agents of the Blackwell Chevrolet Company in ***forging his name to a spurious contract***". <u>T.G. Blackwell Chevrolet Co. v. Eshee</u>, 261 So.2d 481, 483 (Miss. 1972)(emphasis added).

*prove* intentional infliction of emotional distress. The distinction between a Rule 12(b)(6) motion and a Rule 56 motion cannot be overstated.

As with other claims being asserted, here again, Plaintiffs make a causal leap without laying the predicate foundation. It is one thing to say that you suffer from emotional distress; it is quite another to causally link an alleged activity to that emotional distress. Plaintiffs continue to rely on unsubstantiated assertions, improbable inferences, and unsupported speculation to bridge the gap between the facts and any causal connection to the alleged harm. Plaintiffs once more run through their litany of allegations in the hopes that by merely restating them this Court will somehow be persuaded that the elements of intentional infliction of emotional distress have been satisfied, and the causal connection sufficiently linked. The summary judgment standard, however, calls for more once the movant has shifted the burden. Here, Plaintiffs have failed to "present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial." See, Williams v. Univ. of Miss. Med. Ctr., 2011 U.S. Dist. LEXIS 78654 *6 (S.D. Miss. 2011).

Plaintiffs also have an additional, and necessary, element that must be proven and it is one that they failed to prove; namely, that the claimed emotional distress "was a reasonably foreseeable consequence of the negligent or intentional act of another." Smith v. Malouf, 722 So.2d 490, 497, (Miss. 1998)(citations omitted). Plaintiffs attempt to tie a bow around the reasonably foreseeable element with one conclusory statement: "A jury might find the acts to be sufficiently motivated by malice-the 'desire to cause pain, injury, or distress to another'-to reasonably, foreseeably have caused that distress." (Docket no. 142, p. 38). Plaintiffs' brief is completely devoid of any meaningful analysis of how this leap is made, or of simply how the alleged actions of Dr. Johnson caused emotional distress. Nor is there any discussion, or citation

to the record, wherein Plaintiffs demonstrate to the Court that emotional distress was a reasonably foreseeable consequence of Dr. Johnson's alleged actions. Whatever label one attaches to Dr. Johnson's actions in this case, such actions are not "atrocious or utterly intolerable in a civilized community", such that liability should be imposed. See, Pegues v. Emerson Elect. Co., 913 F. Supp. 976, 982 (N.D. Miss. 1996). Therefore, Plaintiffs failed to show that a genuine issue of fact exists for trial and summary judgment is appropriate as to this claim.

## IV.    Defendants are not liable under the CFAA

Plaintiffs' claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(1)-(7), should be summarily dismissed. Plaintiffs allege that Defendants violated 3 separate sections of the CFAA, namely §§ 1030(a)(2), (4), and (5). Plaintiffs further argue that they suffered "loss" resulting from alleged violations of the CFAA in the form of hiring experts and lost time of Dr. Barlow to address the alleged violations. Additionally, Plaintiffs argue that they have demonstrated that Dr. Johnson possessed the requisite intent to defraud needed to satisfy the elements associated with a CFAA violation. Lastly, Plaintiffs argue that Dr. Johnson accessed Dr. Barlow's message board without authorization or, in the alternative, that he exceeded any authorized access he was given.[8] Plaintiffs failed to demonstrate the existence of a genuine issue of material fact such that this claim should be allowed to proceed to trial.

Plaintiffs valiantly attempt to persuade this Court that they suffered "damage or loss" by arguing that they had to hire an expert, Ted Scott, to investigate and perform remediation services. There is no sufficient record of the necessity of Ted Scott, or the scope of his work, to

---

[8] Defendants' arguments regarding authorization to access the Message Board are contained in Part V of this brief and will not be restated in this section. Defendants restate and incorporate those arguments as if contained herein.

2153367

support this claim[9]  They also direct the Court to the time spent by Dr. Barlow and his wife, Faye, to "respond to the breach".  (Docket no. 142, pp. 45-46).  As Defendants have already demonstrated in their original brief, a plaintiff's own time does not count toward the CFAA's loss requirement.  (Docket no. 116, p. 20).  While "[a]s a general matter, lost revenue damages may qualify as losses under the CFAA when they result from time spent responding to an offense," this is <u>only</u> true to the extent that time detracts from the plaintiff's revenue-generating activities.  <u>Glob. Policy Partners, LLC v. Yessin</u>, 686 F. Supp. 2d 642, 651 (E.D. Va. 2010).

At his deposition, Barlow admitted that he conducted his own investigation on his "off hours," as opposed time to time he would have otherwise been spending with patients.  (Exhibit "A" to Motion at p. 168).  Barlow also admitted that he was not paid for this time.  (<u>Id.</u> at pp. 168–169).  Finally, Barlow's testimony also makes clear that he was not qualified to conduct this investigation, so measuring his "off-hours" time against his hourly rate <u>as a chiropractor</u> is especially untenable.  (Exhibit "A" to Motion at p. 169, 171). ("I had no idea.  I didn't know if it was 5, 10, 15.  I just know there were-- the number of people that we deleted from the message board, something looked suspicious, so -- basically these people may be checked in at 1:30 in the morning, and they have -- they haven't posted anything on the message board from the time they've signed in at the beginning...").  Plaintiffs' response does nothing to refute Dr. Barlow's deposition testimony nor does it demonstrate that a genuine issue of material fact exists such that this claim should be allowed to proceed.

Further, while Plaintiffs allege loss generally (Second Amended Complaint, Docket No. 35 at ¶¶ 88, 95, 102) they have shown no evidence to support those allegations.  Outside experts'

---

[9]Moreover, to any extent which his services in relation to this case are asserted, the viability or the necessity of the same are controverted and the related Daubert motions to exclude his work and opinions are incorporated herein by reference.

2153367

investigation and remediation work is frequently the basis for an assertion of a civil CFAA loss. See, e.g., Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC, 774 F.3d 1065, 1069 (6th Cir. 2014) (outlining investigative efforts of CFAA plaintiff); Vaquero Energy, Inc. v. Herda, No. 1:15-CV-00967 JLT, 2015 WL 5687688, at *5–6 (E.D. Cal. Sept. 25, 2015). Preparation for trial, however, does not count. In a similar case, the court held that "evidence establishes that [plaintiff] retained [expert] for assistance in his lawsuit against [defendant]. Therefore, these invoices [from expert to plaintiff] do not fall within the definition of 'loss' under the CFAA." Brooks v. AM Resorts, LLC, 954 F. Supp. 2d 331, 339 (E.D. Pa. 2013).

Plaintiffs may have engaged a purported computer forensics expert, Ted Scott, for purposes of this litigation, but there is no evidence that Mr. Scott was hired to respond to the alleged "hack" by Dr. Johnson, or that _any_ such remediation work was done by any computer security professional; instead, Mr. Scott was hired to give his opinions and then testify regarding same. The only evidence set forth by Plaintiffs in this regard is Mr. Scott's self-serving invoice for services rendered.

Here, Mr. Scott's expert notes, the apparent lack of any professional incident response work by Mr. Scott, and Mr. Scott's subsequent use of the Message Board in a forensically unsound manner, calls into question the reliability of any computer forensic evidence that Plaintiffs might have hoped to present in this case. (Exhibit "N" to Motion at p. 13; FED. R. EVID. Rules 403, 702, 703, 901). As in Brooks, it also calls into question Plaintiffs' ability to satisfy the CFAA's loss requirement.

The inescapable conclusion from applying these conceded facts to the law is that Plaintiffs did not suffer any cognizable "loss" under the CFAA. The facts cannot sustain Plaintiffs' contentions that they suffered a loss of $5,000 or more. Thus, Counts 2–4 all fail to

12

satisfy the CFAA's loss requirement, and Dr. Johnson is entitled to summary judgment on those Counts.

Regarding the element of intent, Plaintiffs fail to present any affirmative evidence that Dr. Johnson acted with the requisite intent to be found liable under the CFAA. Plaintiffs pay lip service to this important element by, once again, relying solely on their laundry list of alleged bad acts by Dr. Johnson. Their response is devoid of any meaningful analysis, or citation to the record, which would allow a jury to determine Dr. Johnson's intent in this case. Plaintiffs argue, "[r]egarding intent generally, summary judgment is improper if intent is disputed because it is fact-sensitive and dependent upon the credibility of witnesses." (Docket no. 142, p. 39). Ironically, Plaintiffs presented this Court with no witnesses, or proof of any kind, regarding Dr. Johnson's intent. Defendants, however, presented affirmative evidence of Dr. Johnson's intent, which was to provide a public service. Plaintiffs failed to present any affirmative evidence which would allow any claim under the CFAA to proceed. Thus, Defendants are entitled to summary judgment on this claim.

**V.     Defendants are not in violation of the Stored Communications Act**

Plaintiffs allege that Defendants are in violation of the Stored Communications Act because Dr. Johnson allegedly "hacked" Dr. Barlow's message board. (See Second Amended Complaint, Docket no. 35, ¶¶ 75-82). In ¶ 79 of the Second Amended Complaint Plaintiffs allege, "[b]y reading the board, copying and reposting its confidential content, and adding his own content, he obtained and altered electronic communications while they were in electronic storage." Reliance on this set of facts is misplaced. One of the very cases cited by Plaintiffs states, "[a] person who does not provide an electronic communication service [or a remote communication service] can disclose or use with impunity the contents of an electronic

communication unlawfully obtained from electronic storage." <u>Crispin v. Christian Audigier, Inc.</u>, 717 F.Supp. 2d 965, 973 (C. D. Cal. 2010). Thus, even if every allegation contained in ¶ 79 were true - which Defendants deny - those allegations are insufficient to form the basis for a cause of action under the SCA. More importantly for purposes of the present motion, Plaintiffs failed to present any affirmative evidence that would support a claim under the SCA using those allegations as the basis. The only other allegation left relating to this claim is that Dr. Johnson "hacked" into Dr. Barlow's message board. For reasons stated below, this argument fails, as does Plaintiffs' claim under the SCA.

In ¶¶ 78 and 80 of the Second Amended Complaint (Docket no. 35) Plaintiffs allege that Dr. Johnson "hacked" into Dr. Barlow's message board. Dr. Johnson did nothing of the sort. As demonstrated in Defendants' brief (Docket no. 116), to any extent the board may have been accessed, Dr. Johnson was provided access to Dr. Barlow's message board by an authorized user. Plaintiffs produced no evidence to refute this point.

Plaintiffs attempt to circumvent this argument by stating that even if Dr. Johnson had authorization, he exceeded that authorization. However, Plaintiffs failed to present any evidence as to what authorization Dr. Johnson did receive. Consequently, how can Plaintiffs claim he exceeded the authorization given? Quite simply, they cannot. Plaintiffs failed to present any affirmative evidence that Dr. Johnson "hacked" into Dr. Barlow's message board; that Dr. Johnson accessed the board without authorization; or that Dr. Johnson exceeded any authorization given to him. Thus, Plaintiffs' claims under the Stored Communications Act fail as a matter of law.

One other important issue Plaintiffs' response fails to address is Defendants' argument that the Stored Communications Act (SCA) is a component and/or extension of other federal

statutes, mainly the Electronic Communications Privacy Act, the purpose of which is to protect an individual's privacy interests in their confidential communications against unlawful interception or extraction, including by the government.  <u>See</u>, <u>e.g.</u>, <u>Quon v. Arch Wireless Operating Co.</u>, 309 F. Supp. 2d 1204, 1207 (C.D. Cal. 2004) (providing history of ECPA and SCA).  The distinction between traditional cybercrimes - e.g. hacking - and cybercrimes addressed by the SCA is important.  Plaintiffs failed to address in their response how any alleged violation of the SCA by Defendants is grounded in any privacy interests sought to be protected by the SCA.

The SCA is essentially part of the Electronic Communications Privacy Act (ECPA).  "The ECPA's legislative history indicates that Congress passed the SCA to prohibit a ***provider*** of an electronic communications service 'from knowingly divulging the contents of any communication while in electronic storage by that service to any person other than the addressee or intended recipient."  <u>Quon v. Arch Wireless Operating Co.</u>, 309 F.Supp. 2d 1204, 1208-09 (C.D. Cal. 2004)(emphasis added); <u>see also, Crispin v. Christian Audigier, Inc.</u>, 717 F.Supp. 2d 965, 971 (C. D. Cal. 2010)(stating, "[t]he SCA prevents 'providers' of communications from divulging private communications to certain entities and individuals).  None of the Defendants are ***providers*** of an electronic communications service, as that term is used in the SCA and as the legislative history seems to indicate.  The SCA, Defendants argue, and any alleged violation of same, is simply not applicable.

If this Court finds that the SCA does apply, Plaintiffs SCA claims still fail.  Plaintiffs attempt to draw an analogy between electronic bulletin boards, like the one at issue in this case, and postings to Facebook.  They cite the <u>Crispin</u> case for the proposition that the SCA applies to wall postings on Facebook if user's sites are configured to private.  (Docket no. 142, p. 54).

They further cite the Crispin opinion for the proposition that postings on privately configured pages are held for backup purposes as that term is defined in the statute. They then analogize that since private Facebook postings are covered by the SCA, at least in the Ninth Circuit, it follows that board posts are covered since they are considered backup if not deleted. (See Docket no. 142, p. 54). Plaintiffs also claim that their own expert, Ted Scott, did his own comparison of private Facebook postings to messages on Dr. Barlow's board. According to this paid-for opinion, postings on message boards are preserved for backup in the event of a power outage. Therefore, Plaintiffs argue, the message board postings are held for "backup" purposes, thus fitting within the statute. Defendants disagree.

Plaintiffs failed to produce any affirmative evidence that the Message Board content at issue was stored "for purposes of backup protection." To the contrary, the Message Board was the principal, intended location for all such content. No separate backup is alleged in the Second Amended Complaint, nor have the parties developed any facts suggesting one exists. Dr. Johnson did not access any data that was "for purposes of backup protection."[10] Therefore, Dr. Johnson is entitled to summary judgment on this claim.

## VI. Plaintiffs' Lanham Act claims fail as a matter of law[11]

Plaintiffs assert that they have satisfied the necessary elements in order to prove a violation of the Lanham Act, and consequently, this claim should survive summary judgment. Plaintiffs argue that Defendants made false or misleading statements of fact about a product, such statements either deceived or had the capacity to deceive a substantial segment of potential consumers, and that the deception was material, in that it is likely to influence a customer's

---

[10] Defendants also rely upon, and incorporate as if set forth fully herein, their arguments contained in their brief (Docket no. 116, pp. 13-16) related to this particular issue.

[11] Plaintiffs have conceded their Cybersquatting claim arising under the Lanham Act.

2153367

purchasing decision. (Docket no. 142, pp. 56-61). As will be demonstrated, Plaintiffs' Lanham Act claim fails as a matter of law.

Plaintiffs' Lanham Act claim fails for two main reasons: Plaintiffs failed to present any affirmative evidence that; 1) Dr. Johnson, by operation of the Center for Quality Health Care, Facebook page, or www.drandybarlowdc.com, site are in any way in commercial competition with Dr. Barlow, and 2) that Dr. Johnson's alleged statements were made for the purpose of influencing consumers to buy Defendants' goods or services. The absence of ***any*** evidence of this type is fatal to Plaintiffs' claims under this Act.

According to the Fifth Circuit in <u>Seven-Up Co. v. Coca-Cola Co.</u>:

> In order for representations to constitute commercial advertising or promotion under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) ***for the purpose of influencing consumers to buy defendant's goods or services***. While the representations need not be made in a classical advertising campaign, but may consist instead of more informal types of promotion, the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry.

86 F.3d 1379, 1384 (5th Cir. 1996)(internal citations omitted)(emphasis added). "We find this summary of the requirements for establishing 'commercial advertising or promotion' under § 43(a) of the Lanham Act to be both accurate and sound." <u>Id.</u>; <u>see also</u> <u>Smith v. Lucent Techs, Inc.</u>, 2004 U.S. Dist. LEXIS 4074 *82 (E.D. La. 2004)(stating, "[i]n Seven-Up ... the Fifth Circuit mandated that the following test be used when determining whether misrepresentations constitute 'commercial advertising or promotion' within the meaning of the Lanham Act."). "The <u>Seven-Up</u> test has since been adopted by other circuit courts of appeals and district courts." <u>Smith</u>, 2004 U.S. Dist. LEXIS 4074 *82.

This Court needs look no further than the <u>Seven-Up</u> case in order to grant Defendants' motion on this claim. It cannot be disputed that Plaintiffs' response to Defendants' motion for

summary judgment is completely devoid of any ***proof*** that Dr. Johnson made any statement or committed any act "for the purpose of influencing customers to buy his goods or services." In fact, Plaintiffs fail, in their response, to even mention this element, one that is required in the Fifth Circuit to prove a violation of the Lanham Act. See Id.

Defendants are mindful of the fact that Plaintiffs alleged in their Second Amended Complaint (Docket no. 35, ¶ 26) that Dr. Barlow and Dr. Johnson are in commercial competition and that their consulting services compete for some of the same clients. However, as was argued in another section of this brief, *supra*, Defendants are not arguing that Plaintiffs failed to adequately ***plead*** a violation of the Lanham Act, Defendants are arguing that Plaintiffs have utterly failed to adequately ***prove***, with any evidence whatsoever, that they can make out a prima facie case under the Lanham Act. Moreover, the actions complained of here - the Center for Quality Healthcare, Facebook page, and www.drandybarlowdc.com site - were not in any way used to compete with Plaintiffs. A prima facie showing requires not only commercial competition, but that the statements were made for the purpose of influencing customers to buy Defendants' good and services. See Seven-Up, 86 F.3d at 1384. Defendants presented affirmative evidence, in the form of Dr. Johnson's deposition testimony, that the purpose of any alleged statements he made or actions he took were to provide a public service. There is nothing in the record to contradict this evidence. Furthermore, Dr. Johnson offered no goods or services on the Facebook page or www.drandybarlowdc.com gripe site. If Plaintiffs have not yet brought forth affirmative evidence showing that Dr. Johnson's statements were made for the purpose of influencing customers to buy his goods and services, then this claim must fail and summary judgment is warranted.

18

Assuming, *arguendo*, that this Court disagrees with Defendants and finds that Plaintiffs have met their burden in proving the element discussed above, this claim still fails. Plaintiffs spend a considerable amount of time attempting to persuade this Court that Dr. Johnson made false or misleading statements. However, any statements of fact made by Dr. Johnson, such as that Plaintiffs were under investigation by FBI or Medicare, were in fact true. (Exhibit "E" to Motion). The lynchpin of a prima facie showing under the Lanham Act is that the statement be false or misleading. See Pizza Hut v. Papa John's Int'l, Inc., 227 F.3d 489, 495 (5th Cir. 2000). Facts that are true fail to make out a prima facie case.

Plaintiffs also argue that Dr. Johnson's statements had the capacity to deceive a substantial segment of potential consumers. As proof of this allegation Plaintiffs again turned to a hired expert. Plaintiffs' own expert, David Shirley, found that 62% of individuals asked in a "survey" found no possibility of confusion. (Exhibit "G" to Motion at pp. 5, 9).[12] This conclusion is firmly supported by Dr. Johnson's designated expert Kecia Johnson, Phd. (Exhibit "I" to Motion). However, there was no likelihood that any "statement either deceived, or had the capacity to deceive a substantial segment of potential consumers" or any such alleged "deception [was] material, in that it [was] likely to influence the consumer's purchasing decision" as required by the Lanham Act.

Defendants respectfully urge this Court to summarily dismiss Plaintiffs' Lanham Act claims because they have failed to satisfy the Seven-Up test: Plaintiffs failed to offer any proof that Dr. Johnson's alleged statements or actions were made for the purpose of influencing consumers to buy Defendants' good or services. This lack of proof is fatal to their claim.

---

[12] Defendants filed a Daubert motion to exclude any testimony or opinions by David Shirley (docket nos. 117, 118, and 124). Should Defendants motion be granted, Plaintiff will possess no evidence supporting any claim of alleged confusion. Nonetheless, Mr. Shirley actually verifies that a vast majority of consumers would not be confused or misled.

## CONCLUSION

Based upon the foregoing, and based upon the motion for summary judgment and supporting memorandum (Docket nos. 115, 116), Defendants' urge this Court to grant summary judgment as to all claims. Defendants have demonstrated that no genuine issue of material fact exists as to any of the claims asserted by Plaintiffs. Further, Plaintiffs failed in their response to present any affirmative evidence or set forth specific facts showing a genuine issue of material fact exists, and as such, summary judgment is warranted as to all claims.

Respectfully submitted, this the 11th day of August, 2017.

**DR. MICHAEL DR. JOHNSON, D.C., ET AL**
**Defendant/Counter-Plaintiff**

**BY:***/s/Scott R. Hendrix*
**SCOTT R. HENDRIX, MSB #10680**
**L. BRADLEY DILLARD, MSB #10114**

**OF COUNSEL:**

**MITCHELL, McNUTT & SAMS, P.A.**
**105 SOUTH FRONT STREET**
**POST OFFICE BOX 7120**
**TUPELO, MISSISSIPPI  38802-7120**
**(662) 842-3871 (telephone)**
**(662) 842-8450 (facsimile)**
shendrix@mitchellmcnutt.com
bdillard@mitchellmcnutt.com

2153367

## CERTIFICATE OF SERVICE

I, Scott R. Hendrix, one of the attorneys for Defendants/Counter-Plaintiffs, do hereby certify that I have this day served a true and correct copy of the above and foregoing Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment on the following via ECF filing:

  James R. Franks, Jr., Esq.
  William R. Wheeler, Jr., Esq.
  Tiffany K. Pharr, Esq.
  Wheeler & Franks Law Firm, P.C.
  P.O. Box 681
  Tupelo, MS 38802
  jfranks@wheelerfrankslaw.com
  Wwheeler@wheelerfrankslaw.com
  tpharr@wheelerfrankslaw.com

  C. Jackson Williams, Esq.
  Attorney at Law
  P. O. Box 69
  Taylor, MS 38673-0069
  cjxn@mac.com

THIS the 11th day of August, 2017.

         */s/Scott R. Hendrix*_____
         SCOTT R. HENDRIX

2153367